## COMMONWEALTH vs. PAUL J. O'BRIEN.

Nos. 87-1380 & 88-P-661.

Middlesex. January 17, 1989. — April 7, 1989.

Present: DREBEN, WARNER, & FINE, JJ.

*Evidence*, Privileged communication, Hospital record, Communication between patient and psychotherapist. *Practice, Criminal*, Discovery, Appeal. *Privacy. Department of Social Services.*

Before trial of an indictment for forcible rape of a child under age sixteen, the defendant was entitled to inspect, pursuant to G. L. c. 112, § 135 (*f*), without any showing of particularized need, an investigatory report relating specifically to the alleged criminal episode prepared by a social worker in the Department of Social Services. [186-187]

Where a criminal defendant was not given access before trial to a report containing exculpatory evidence with which to impeach the allged victim's credibility and where credibility was crucial to the outcome of the case, the defendant was entitled to a new trial. [187-188]

The judge at the trial of an indictment for rape of a child under age sixteen correctly concluded, after an in camera review, that certain impounded records of a State psychiatric hospital and school contained nothing to indicate that the alleged victim had made prior false claims of sexual assault, and the judge correctly denied the defendant's motion for leave to inspect the records, brought on the basis of an assertion that they contained such information. [188-189]

The records of a State psychiatric hospital and school relating directly to an alleged rape that occurred during the victim's hospitalization there were material to the defense of the ensuing indictment; any portion of the records alleged to fall within the psychotherapist-patient privilege, G. L. c. 233, § 20B, were to be reviewed in camera by the trial judge; and other portions alleged to be confidential by reason of G. L. c. 123, § 36, or G. L. c. 66A, were to be reviewed by the trial judge in camera for a weighing of the records' materiality, which, in the circumstances, appeared to be substantial, against the victim's interest in privacy. [189-190]

A criminal defendant was not entitled to access to impounded documents in order to prepare his appeal on the issue whether the trial judge erred in denying counsel access to the documents at trial. [190]

INDICTMENT found and returned in the Superior Court Department on November 7, 1985.

The case was tried before *William W. Simons*, J.

A motion for leave to inspect impounded documents was heard in the Appeals Court by *Smith*, J.

*Francis K. Morris* for the defendant.

*Patricia M. Darrigo*, Assistant District Attorney, for the Commonwealth.

FINE, J. These appeals arise out of the defendant's conviction of forcible rape of a child under sixteen. G. L. c. 265, § 22A. In the principal appeal, the defendant raises issues relating to discovery and the conduct of the trial. We conclude that the defendant was improperly denied access to material which would have been helpful to his defense and that he is entitled, therefore, to a new trial. In the second appeal, the defendant claims that a single justice of this court erroneously denied him access for purposes of appeal to documents which were impounded and reviewed in camera at the trial stage. We affirm the order of the single justice.

The Commonwealth presented the following evidence at trial. The victim, a fourteen year old youth, was admitted on the evening of June 4, 1985, to the Gaebler Children's Unit at Metropolitan State Hospital (Gaebler), a secure psychiatric hospital and school operated by the Department of Mental Health. The defendant was a member of Gaebler's night staff. During the victim's second night at Gaebler, the defendant accompanied him to a bathroom away from the ward. After the victim smoked a cigarette given him by the defendant, the defendant forced the victim to perform fellatio. As they returned from the bathroom to the ward, the defendant warned the victim not to tell anyone what had happened and promised to do him favors. A short while later, the defendant brought the victim a radio and headset to use. The next morning, the victim told a female staff member about the incident. That staff member gave testimony relating the victim's detailed statement to her. Another staff member on duty at the time of the alleged incident testified about a telephone conversation with the defendant which was the basis for a consciousness of

guilt instruction. The defendant testified that he took the victim to the bathroom during the night in question, but denied that he made any sexual advances. He also denied giving the victim a cigarette. Although other Gaebler staff members testified on behalf of the defendant, the trial was essentially a clash of the two principal witnesses' credibility.

Repeatedly, before and during trial, the defendant's attorney moved for production of records of the Department of Social Services (DSS) and Gaebler. The documents were produced and ordered impounded. They were reviewed in camera by the trial court judge. He refused the requests of defense counsel to examine them. They are now before us for an in camera review. They include a June 7, 1985, DSS child abuse and neglect form filed pursuant to G. L. c. 119, § 51B, concerning the alleged incident. On the form, the investigating social worker reported interviews with the victim, the victim's social worker, several Gaebler staff members, and others. The remaining impounded documents, relating to the period June 4 through June 8, 1985,[1] are a set of nurses' progress notes on the victim and a daily log sheet for his ward. The former consists of observations about the victim's activities, statements made by the victim, including some about the incident, and a copy of a note he wrote to another patient. The latter consists of observations by various nurses about the victim and his activities.

1. *The appeal from the conviction.*

The DSS investigatory report, because it includes statements made by the victim and others to the investigatory social worker while she was serving in a professional capacity, is privileged under G. L. c. 112, § 135 (see *Commonwealth* v. *Collett*, 387 Mass. 424, 427-428 [1982]; *Allen* v. *Holyoke Hosp.*, 398 Mass. 372, 376-377 [1986]), unless it falls within an exception to the

---

[1] During trial, the defendant sought to have additional Gaebler records brought into court on the assertion that they would reveal that the victim had made prior false claims of sexual assaults. The defendant had specified the dates June 4 through 8, 1985, on some of his pretrial motions, and apparently records for only those dates were produced. If there is a new trial, the defendant may clarify his request as to dates.

privilege. General Laws c. 112, § 135 (*f*),[2] makes an exception "where the social worker has acquired the information while conducting an investigation pursuant to [c. 119, § 51B]." In *Commonwealth* v. *Jones*, 404 Mass. 339, 341 (1989), the Supreme Judicial Court indicated that such reports should be made available to defense counsel when the incident which is the subject of the report is being prosecuted. The report sought in this case was prepared shortly after the incident and related specifically to the alleged criminal episode. Thus, the defendant had the right to inspect the report before trial without any particularized showing of how it would assist in his defense.

We need not decide whether, to obtain a new trial, a defendant, improperly deprived of the right to see a report such as the DSS report in this case, must show that he was hurt by the deprivation. Although we are aware of no precedent directly in point, there are related situations in which a showing of possible prejudice has been required (see *United* v. *Agurs*, 427 U.S. 97, 109-113 [1976]; *Commonwealth* v. *Stewart*, 365 Mass. 99, 104 [1974]; *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175 [1982]; *Commonwealth* v. *Collins*, 386 Mass. 1, 9-10 [1982]; *Commonwealth* v. *Liebman*, 388 Mass. 483, 488 [1983]), and others where it has not (see *Commonwealth* v. *Balliro*, 349 Mass. 505, 516-518 [1965]; *Commonwealth* v. *Johnson*, 365 Mass. 534, 546-547 [1974]; *Commonwealth* v. *Lewinski*, 367 Mass. 889, 900-902 [1975]; *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499, 504 [1973]). We acknowledge that, because we do not know the full extent of pretrial discovery, we are at a disadvantage in determining on the present record[3] whether depriving defense counsel of access to DSS report was prejudicial. Nevertheless, on the basis of our in camera review of the report, we doubt that the error was harmless beyond a reasonable doubt. Within the document is a report by the investigating social worker of an interview with the vic-

[2] Subsection (*f*) was added to § 135 by St. 1985, c. 524, which was approved November 23, 1985. The trial in this case began on September 25, 1986.

[3] Neither the defendant nor the Commonwealth could reasonably have been expected to anticipate the issue as it has developed.

tim. In that interview, if accurately reported, the victim's description of the relevant events differs in some ways from his testimony at trial.[4] The inconsistencies between the two versions, however minor, if explored in cross-examination, might have affected the victim's credibility. Credibility was crucial to the outcome of the case. We think the defendant ought, therefore, to have a new trial.[5]

We discuss the other issues raised on the appeal from the conviction only insofar as they are likely to recur at any retrial of the defendant on this indictment.

Access to the impounded Gaebler records was sought by the defendant on the basis of an assertion that they contained information about the victim's prior false statements of sexual assault which the defendant would have the right to explore for possible use at trial. See *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978). After the trial judge reviewed the documents in camera, he informed the parties that he found no indication in the records of any prior false claims by the victim

---

[4] For example, there were inconsistencies as to the victim's sleeping pattern during the night, the number of trips the victim and the defendant took to the bathroom together, and when it was first discussed that the defendant would provide the victim with a cigarette. There was some cross-examination as to the first two subjects but none as to the last.

We do not fault the trial judge for his pretrial ruling. The then recent amendment to G. L. c. 112, § 135, providing an exception to the social worker privilege for § 51B reports apparently was not brought to his attention. Nor could he have known before trial that any inconsistency would develop between the report and the victim's trial testimony. Although we recognize that it might have been burdensome, it would have been preferable for the judge, after the victim's direct testimony, to have reexamined the report of the victim's statement to the social worker to see if there were any inconsistencies. Defense counsel, with his advocate's eye, was prevented from performing that function.

[5] The statement of the victim, which could be used to impeach his testimony at trial, constituted exculpatory evidence. See *Commonwealth* v. *Ellison*, 376 Mass. 1, 22 (1978); *Commonwealth* v. *Collins*, 386 Mass. 1, 8 (1982). Thus, had the statement been in the hands of the prosecutor, it would have been subject to mandatory discovery under Mass.R.Crim.P. 14(1), 378 Mass. 874 (1979). General Laws c. 119, § 51B, requires that DSS transmit a copy of any § 51B report to the district attorney. We were told at oral argument that the district attorney did not have a copy; in a later communication we were told that she did have a copy.

of rape or sexual assault. He told the parties that, in fact, one prior claim of sexual assault had resulted in a conviction of that offense. We agree with the trial judge, based upon our own in camera review of the impounded records, that they contain no indication of false claims by the victim of prior sexual assault. See *Commonwealth* v. *McDonough*, 400 Mass. 639, 649-651 (1987); *Commonwealth* v. *Vieira*, 401 Mass. 828, 838-839 (1988).

Unquestionably, however, the documents sought, all relating directly to the alleged incident, were material to the case. They concerned the hospitalization during which the alleged rape occurred, and they included observations of the victim on the ward shortly before anʋ shortly after the alleged incident, as well as statements made by the victim and staff members, some of whom testified. Such material would ordinarily be in the hands of the defense.

The Commonwealth contends that there were several statutory bases for treating the records as confidential. Some portions of the hospital records may indeed fall within the psychotherapist-patient privilege provided for in G. L. c. 233, § 20B. Notations were made in the records by nurses who may have been qualified under that statute as "psychiatric nurse mental health clinical specialist[s]." G. L. c. 233, § 20B, definition of "[p]sychotherapist," as now appearing in St. 1986, c. 557, § 178. The portions of the records with such notations should be subject to an in camera review by the trial judge without the participation of defense counsel. See *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 60 (1987); *Commonwealth* v. *Jones*, 404 Mass. at 344. As to any remaining portions of the Gaebler records, the Commonwealth relies for its claim of confidentiality on G. L. c. 123, § 36, which generally protects the privacy of records of the Department of Mental Health, and also G. L. c. 66A, the Fair Information Practices Act, which protects individuals against disclosure of certain personal data held by State agencies. Both statutes permit disclosure upon court order. According to G. L. c. 123, § 36, as now appearing in St. 1986, c. 599, § 38, mental health records may be "open to public inspection . . . upon proper judicial order whether or

not in connection with pending judicial proceedings . . . ." Under G. L. c. 66A, a judge may order release of records to a litigant if disclosure would not be an unwarranted invasion of the privacy of the individual to whom the material relates. See *Allen* v. *Holyoke Hosp.*, 398 Mass. at 381-382. At most these two general confidentiality statutes required the judge to conduct a preliminary in camera review of the Gaebler records to determine whether they were what they purported to be and to weigh their materiality against the victim's interest in privacy. Given the substantial materiality of the records to the case, we do not think the policies underlying those general confidentiality statutes are sufficiently compelling to override the defendant's right to inspect the unprivileged portions of them in preparation of his defense.

2. *Appeal from the single justice's order.*

While the appeal from the defendant's conviction was pending, his appellate counsel made a novel request for access to all of the impounded documents so that he could assess, in preparation of the appeal, whether the trial judge may have erred in denying counsel access to the documents at trial. A single justice of this court denied appellate counsel's request; the defendant has appealed that ruling in a separate appeal, which has been consolidated with the appeal from the conviction.

Impounded documents are ordinarily available to the appellate court for review. Compare *Commonwealth* v. *Lewinski*, 367 Mass. at 903. The confidentiality issues are generally the same at the appellate level as they were at the trial level. If a defense counsel had no right to see the particular documents at the trial level, he has no right to see them at the appellate level. The single justice's denial of access to the documents while the appeal was pending, therefore, was not error. To hold otherwise would be to allow the single justice to determine such an appeal.

*Judgment reversed.*

*Verdict set aside.*

*Order of the single justice affirmed.*