## Commonwealth vs. Robert Ramos.

No. 97-P-1316.

Bristol. November 10, 1998. - September 24, 1999.

Present: Perretta, Kass, & Flannery, JJ.[1]

*Rape. Indecent Assault and Battery. Evidence,* Medical record, Bias, Motive, Relevancy and materiality. *Practice, Criminal,* Required finding, Instructions to jury, Verdict. *Jury and Jurors.*

At the trial of indictments alleging sexual abuse of a child, the judge correctly excluded from evidence certain mental health records of the victim, where they contained nothing of relevance to the defendant's claim that the victim had a motive to lie. [796]

Evidence at the trial of indictments alleging sexual abuse of a child was sufficient to warrant the jury to conclude that the defendant was seventeen years old at the time of the incidents testified to by the victim. [797]

At the trial of two indictments alleging rape and indecent assault and battery of a child, error, if any, in the judge's specific unanimity instruction did not give rise to a substantial risk of a miscarriage of justice, where the victim testified to five particular and discrete instances of abuse and where the defendant's theory of defense was that the allegations were false. [797-799]

INDICTMENTS found and returned in the Superior Court Department on July 15, 1993.

The cases were tried before *Richard J. Chin,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Shaun S. McLean,* Special Assistant District Attorney, for the Commonwealth.

PERRETTA, J. In 1993, a grand jury indicted the defendant for the crimes of forcible rape of a child under the age of sixteen years and indecent assault and battery on a child under fourteen

---

[1]This case was argued before Justices Perretta, Kass, and Flannery. Following the death of Justice Flannery, Justice Armstrong was added to the panel and participated in this decision.

years of age. See G. L. c. 265, §§ 22A and 13B. In anticipation of trial on these charges, the defendant sought access to the victim's mental health records. His motion was supported by an affidavit in which he stated that the victim had made prior false allegations of rape. A Superior Court judge (other than the trial judge) allowed the defendant access to a limited number of those records. However, the trial judge, pursuant to a pretrial motion in limine brought by the Commonwealth, precluded the defendant from using the records to which he earlier had been granted access. The jury found the defendant guilty of indecent assault and battery and so much of the forcible rape indictment as charged the lesser included offense of rape. He raises three issues on appeal: that the trial judge was in error in precluding him from using the victim's mental health records to show that she was biased and had a motive to lie, that the evidence was insufficient to show that any rape occurred within the time frame set out in the indictment, and that the trial judge failed to instruct the jury on the requirement of specific unanimity. We affirm the convictions.

1. *The evidence.* As charged by the grand jury in each of the two indictments, the acts in issue occurred "on divers dates and at divers times from on or about" June 17, 1987, to on or about December 31, 1989. There was undisputed evidence to show that the victim, Mary (a pseudonym), was born on May 17, 1977, and resided with her parents and two brothers (one older and one younger). The defendant, her cousin (the son of her father's brother), was born on June 17, 1970, and had just turned seventeen when, according to the indictments, he began to sexually abuse the ten year old victim.

There was also undisputed evidence to show that at all times within the time period set out in the indictments, Mary lived with her mother, father, and two brothers in the family home situated on a twenty-three acre site in Swansea. Although most of the land was wooded, there was a large yard and a swimming pool. The property provided a setting in which the victim and her two brothers and the defendant and his brother were free to play, ride dirt bikes, hunt, and swim. The defendant and his family lived in Fall River and he and his brother frequently visited Mary's home. Her family maintained an "open-door policy." During the summer months, the defendant would be at Mary's home a "few times a week." Either he would take a bus to Swansea, or his father would give him a ride, or Mary's

parents would drive to Fall River and bring him to their home. He would sometimes stay the night. The two families also celebrated holidays together, and Mary's father, a retired State trooper, was helping the defendant to prepare for the State Police Academy entrance examinations. In short, all three witnesses at trial, Mary, her mother, and the defendant, were in agreement that their two families comprised a close-knit, extended family unit.

Against this backdrop, we relate Mary's testimony concerning five acts of abuse within the time period charged in each of the indictments. The first incident occurred one day in the summer of 1987, while Mary was riding her dirt bike. The defendant came upon her and demanded that he be allowed to use it. When she refused, he forced her hand to his penis and held it there until he ejaculated. Fearing that her mother would hit her should she learn of this incident, Mary told no one. Several weeks later, she and the defendant were in her swimming pool. He again forced her hand to his penis, reached beneath her bathing suit, and penetrated her vagina with his finger. When Mary exclaimed that he was hurting her, the defendant told her to "like just handle it." This incident ended when one of Mary's brothers came outside and joined her and the defendant in the pool. Within a few days after the second incident, Mary was on a couch in her living room watching television. The defendant came up from behind the couch, put her hand to his penis and his finger in her vagina, and ejaculated. Throughout this third incident, Mary was crying, protesting that the defendant was hurting her, and asking him to stop. Stating that he liked what he was doing, the defendant ceased his actions only when someone came to the front door. In the summer of 1988, the defendant forced Mary to masturbate him to ejaculation, an incident he repeated in the summer of 1989, as best Mary could recall.

Sometime during her twelfth year, Mary began to understand the magnitude of what the defendant was doing to her, and she became more adamant in her resistance to his actions. However, because she did not want to destroy the extended family unit, she remained silent about these incidents of abuse by the defendant.[2]

Testifying on his own behalf, the defendant acknowledged

[2]Because the victim remained silent for thirty-one months, the trial judge excluded all fresh complaint testimony from evidence.

that he had had a wonderful relationship with Mary's family and had been a frequent visitor to their home. He denied that he had ever sexually assaulted Mary.

2. *The victim's mental health records.* Months before trial, a Superior Court judge other than the trial judge allowed the defendant access to some, but not all, of the victim's mental health records, which he then segregated from those to which he denied disclosure.[3] There is nothing in the record that indicates that the motion judge, as required by the protocol set out in *Commonwealth* v. *Bishop*, 416 Mass. 169, 183 (1993), made written findings in support of his ruling allowing disclosure of some of the victim's mental health records.

When the trial judge took up the Commonwealth's motion in limine challenging the defendant's right to use the earlier disclosed materials in his defense, the defendant did not argue, as he had before the motion judge, that the materials provided information concerning prior false allegations of rape by the victim. He instead argued that he wished to use certain specified records to show that the victim's father had "punched" her on numerous occasions, that she consequently harbored deep hostility toward him, and that this hostility gave rise to a desire by her to retaliate and make serious, false allegations against his protégé, the defendant, and thereby to preclude him from becoming a State trooper. The trial judge found and concluded that there was nothing in the records upon which the defendant specifically relied or had cited in his argument that was relevant to a showing that the victim might have had a motive to lie about the acts in issue. However, he went on to state that "testimony may come in that may change that [ruling]. So, certainly you're able to make further arguments if the course of the trial changes the situation."[4]

When the victim was asked on direct examination why she had not told anyone what the defendant was doing to her, she stated that she didn't tell anyone for the "same reason that — what's happening right now . . . I have no family anymore

---

[3]The defendant makes no argument on appeal that he should have been granted access to more of the records than allowed by the motion judge.

[4]The trial judge took the records specified by defense counsel as those he wished to use and marked them Exhibit A for identification. We called for the exhibit and conducted our own review of the records. See *Commonwealth* v. *Pare*, 427 Mass. 427, 431 (1998). Compare *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. 114, 120-121 (1999).

. . . I mean, because my father lost his brother and his — and he doesn't talk to his father anymore because of this. Now, on Christmas and all of the holidays, I don't do nothing . . . I didn't want this to happen." Based upon that testimony, the defendant renewed his request to use the victim's mental health records. He argued that the victim was a "liar," that she had "just testified that the reason her family was in a shambles" was because of her revelations about the defendant, that the records contradicted that testimony, and that he should be allowed to use the *Bishop* materials to impeach her credibility. The trial judge agreed with the prosecutor's contention, as do we, that the victim's response concerned the breakdown of the extended and not the immediate family unit, and again denied the defendant's request.[5]

Our review of the excluded materials leads us to conclude that they contain nothing of relevance to the defendant's theory of defense: that the victim falsely accused the defendant to hurt her father. To be sure, the materials contain reports, made in late 1992 and throughout 1993, of tension and conflict between the victim and *both* her parents. This conflict, however, is primarily attributed to the victim's behavior in school. It also appears that, sometime in 1992, the victim suffered from severe depression and abused drugs and alcohol, a matter of extreme concern to her parents due to a similar experience with one of their sons. The victim also attributed much of the conflict with her parents to their demands for "perfection" from her and not her brothers.

Although the defendant has stitched together a claim that the victim had a motive to lie, her mental health records do not support his assertion. They contain nothing that suggests either that the victim, although troubled, was resentful of any relationship between her father and the defendant or that the immediate family unit was in a "shambles" because of her revelations about the defendant. See *Commonwealth* v. *Fuller*, 423 Mass. 216, 227-228 (1996) (information insufficient to justify even an in camera inspection). Compare *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572 (1997), *S.C.*, 427 Mass. 427, 431 (1998) (showing sufficient to justify in camera inspection, access, and use at trial). We see no error in the trial judge's ruling.

---

[5]In this regard, we note that the immediate family unit (the victim, her parents, and her brothers) was still intact at the time of trial.

3. *The sufficiency of the evidence.* Claiming that the Commonwealth failed to show that the rapes occurred *subsequent* to June 17, 1987, the defendant argues that prosecution of him in the Superior Court was barred by G. L. c. 119, § 74, and that he was, therefore, entitled to a required finding of not guilty.[6] In making this argument, the defendant latches onto the fact that Mary testified that she was born on May 17, 1977, and that she was "[b]etween ten and twelve, probably about ten," when the defendant first raped her. Based upon Mary's date of birth and her testimony, the defendant argues that the evidence was insufficient to show beyond a reasonable doubt that the first rape occurred after June 17, 1987.

Although the Commonwealth agrees with the defendant about the age-based jurisdictional limitations of the Superior Court, it argues that it sustained its burden of proving that the rapes occurred after the defendant had attained seventeen years of age.

Mary testified that the defendant's abuse of her began in the summer of her tenth year and that each of the five incidents related by her occurred during the summer months, when the defendant would visit her home a "few times a week," sometimes staying overnight. According to her mother's testimony, her property provided an idyllic setting in which Mary, her two brothers, the defendant, and his brother were free to play, ride dirt bikes, hunt, and swim. Viewing this evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), we think it was sufficient to allow a jury to find that the rapes took place after June 17, 1987, that is, at a time when children are not in school and are free to spend their days engaged in those daily outdoor activities normally associated with summer.[7]

4. *Instruction on specific unanimity.* The defendant neither

---

[6]Acknowledging the fact that a request for a required finding of not guilty was not made at trial, the defendant frames his argument in terms of the substantial risk of a miscarriage of justice standard of review. See, e.g., *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986). The argument misses the point. If the Commonwealth's evidence was insufficient to show that the rapes occurred subsequent to June 17, 1987, the rape indictment would be subject to dismissal for lack of jurisdiction over the offenses committed while the defendant was a juvenile.

[7]Moreover, the jury were made aware of the fact that, for whatever reason, the date of June 17, 1987, was of critical significance. The trial judge, perhaps because of the jurisdictional importance of the date, expressly instructed them that the Commonwealth had the burden of proving that the offenses

requested a specific unanimity instruction nor objected to the jury instructions given by the trial judge. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 512-513 (1995); *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170, 172 (1986). He argues on appeal that the trial judge's failure to give such an instruction created a substantial risk of a miscarriage of justice. The Commonwealth counters that the trial judge repeatedly emphasized the unanimity requirement throughout his instructions and sufficiently conveyed to the jury the need for specific unanimity for each of the crimes charged.

As we read the trial judge's instructions to the jury, we think there can be no doubt that they understood the need for general unanimity. However, as explained in *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 442, cert. denied, 519 U.S. 1015 (1996): "The *Conefrey* case . . . stands for the proposition that, when the Commonwealth introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged." The only instruction given by the trial judge which touched upon specific unanimity was:

> "The Commonwealth must prove beyond a reasonable doubt that the offense charged within the indictment occurred within that time and that within that time period that the defendant had committed at least one act constituting all of the elements of the crime as charged in that indictment against the alleged victim named within the indictment."

We will assume for purposes of decision that this instruction was not sufficiently forceful to satisfy *Conefrey* and confine our review to the issue whether any deficiency gives rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Conefrey*, 420 Mass. at 516 n.11.

Based upon the victim's testimony concerning five particular and discrete instances of abuse, compare *Commonwealth* v. *Kirkpatrick*, 423 Mass. at 443 (victim "provided reasonably detailed descriptions of various distinguishable forms of abuse but otherwise spoke largely in generalities"), and the defendant's

comprehended by each of the indictments occurred within the time frame therein specified. Compare *Commonwealth* v. *Day*, 387 Mass. 915, 921-923 (1983) (no prejudice to the defendant from jury instructions to the effect that date of offense was not an essential element of the offense).

theory of defense (the victim's allegations were false), we conclude that any error in the trial judge's instructions concerning the need for specific unanimity was not "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

*Judgments affirmed.*