## COMMONWEALTH vs. JUDITH CLAIRE CLEMONS.

Hampden. September 18, 1981. — November 9, 1981.

Present: GREANEY, PERRETTA, & SMITH, JJ.

*Evidence*, Communication between patient and psychiatrist, Privileged communication, Relevancy and materiality.

Communications made to a therapist who did not meet the qualifications specified in G. L. c. 233, § 20B, were not privileged under the statute even though the therapist received general supervision from a statutorily qualified psychotherapist. [584-587]

At a criminal trial exclusion of testimony by a therapist about communications made to him by the defendant and her children was reversible error where the communications were not privileged under G. L. c. 233, § 20B, because the therapist lacked the requisite qualifications and where the communications were relevant to the issue of credibility which was of critical importance in the trial. [587-590]

INDICTMENTS found and returned in the Superior Court Department on November 15, 1979.

The cases were tried before *Griffin, J.*

*William J. Leahy (William M. Bennett* with him) for the defendant.

*John T. McDonough*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The defendant was convicted of raping two of her daughters and of contributing to their delinquency as well as to the delinquency of two of her sons. There was evidence that the offenses occurred during September through December, 1978, and the defendant's convictions rest on the testimony of her children. To enhance her credibility and to cast doubt on that of the children, the defendant sought to introduce the testimony of a family therapist who had been working with her and the children from January to December 4, 1978. The therapist, how-

ever, informed the judge that he was concerned about the confidentiality of his communications. A voir dire was held to determine whether the psychotherapist privilege applied, G. L. c. 233, § 20B, as amended through St. 1977, c. 817, and, if so, to determine whether it was "more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychotherapist be protected." G. L. c. 233, § 20B(c), inserted by St. 1968, c. 418. At the conclusion of the hearing, the judge ruled that the therapist could not testify. We hold that since the communications were not made to a psychotherapist they were not statutorily protected from compelled disclosure. Because we are unable to conclude that the excluded relevant testimony would not have had a significant impact on the outcome of the trial, we reverse the judgments.

1. *The Evidence.*

(a) *The Commonwealth's case.* The defendant and her husband, the children's natural father, were divorced in the fall of 1977. The defendant and the children remained in the fourteen-room house, which was badly in need of repairs. In the summer of 1978, a son, his friend, and one Richard Gamache began to make repairs on the house. Gamache and the defendant soon struck up a friendship, which by November had become a sexual relationship, and Gamache moved into the house, sharing the defendant's first floor bedroom.

The children testified that after Gamache moved in, the house became dirtier than ever, that their clothes were always messy, and that the defendant began to use marihuana and increase her liquor consumption. They related that Gamache and the defendant smoked marihuana and drank liquor in their presence and that they engaged in sexual relations with the children watching. They alleged that the defendant encouraged and demanded that they sample marihuana and alcohol. They accused Gamache of striking them, of sexually touching and grabbing them, and of raping two of the girls. They described their mother's conduct during these rapes as follows. She assisted Gamache in the

rape of one of her daughters by disrobing and restraining her; when Gamache raped a second daughter, the defendant stood by and laughed, telling her daughter that she would "love it."[1]

On cross-examination, one son denied that the defendant had both strongly reprimanded him for drinking and threatened to curtail his activities unless he stopped. A daughter denied that the defendant had spoken to her about her open and inappropriate displays of affection for her boyfriend and going off to the woods with him. The daughter did admit that she had falsely accused her father of raping her, but she insisted that the defendant demanded that she make the false allegation.

The children were also questioned, without objection by the Commonwealth, about their sessions with the therapist. They acknowledged that they and the defendant had met with him at their home, but the son denied that his drinking and the defendant's reprimand were ever discussed. The daughter also denied that her behavior towards her boyfriend was brought up to the therapist.

All the children acknowledged that they had never complained to the therapist about the defendant's use of marihuana and alcohol, or about Gamache and his actions. They stated that once Gamache moved into the house, the therapist's visits stopped.

(b) *The defendant's case.* The defendant testified that after her husband left, her only source of income was welfare payments. She related that the children felt deep anger and bitterness toward their father and that she could not control them. Because of the discord in the home and her concern for the children, she spoke to a school guidance counsellor, seeking assistance. So began the therapist's visits.

She did not deny her relationship with Gamache or her children's awareness of it. She stated that before asking Gamache to move in, she discussed the matter with them. She claimed that they had no objections to Gamache's living

---

[1] Gamache was not a defendant in this trial.

in the house because he was of help to them. While she admitted that Gamache smoked marihuana in the house, she said he did not do so in the children's presence; he would go to the upstairs den. On one or two occasions she had joined him in this activity. She denied that she had encouraged and urged her children to smoke and drink with her and Gamache, and she said that although the children knew Gamache shared her bedroom, she and Gamache had never openly engaged in sexual intercourse. She related how she had reprimanded her son about his drinking and how she had spoken to one daughter about her indiscretions with her (the daughter's) boyfriend. She denied the allegations that she had participated with Gamache in the rape of one daughter and that she had approvingly watched him rape another. The counselling sessions, she testified, were stopped by the therapist, at his decision.

2. *The Voir Dire Testimony.*

The therapist testified that he spoke with the defendant at the request of a school guidance counsellor. According to his records, he met with the defendant and the children at their home for an hour a week from mid-January to July, 1978. The visits were then decreased to every other week until they ended after the first week in December, 1978. When he began seeing the defendant and the children, the family was very disorganized. The father, before leaving home, had been firm with the children, but after he left, things got out of hand because the defendant was unable to assert control over the situation. The children felt a great deal of anger and bitterness toward their father because he had abandoned them. The sessions were directed at trying "to help strengthen [the defendant's] role as a parent in the family" and making her take control of the home. During the visits by the therapist, the defendant and the children would discuss the children's resistance to and complaints about having to help with the household chores. The children would also vent their feelings about their father. Their anger and bitterness toward their father would be most intense after they had visited with him. The defendant was

described as understanding of her children on this point, and she encouraged them to express their feelings during these weekly sessions. She urged them to be patient with their father.

The therapist also testified that the defendant and the children had discussed with him one son's drinking and the defendant's response to it. They also discussed the children's objections to one sister's public behavior toward her boyfriend and how the defendant had dealt with the matter. While the therapist was unaware of the fact that Gamache had moved into the house in November, he had seen Gamache in the area when he visited. The children never mentioned his name or complained about being abused or mistreated; nor did they bring up the defendant's use of marihuana and alcohol.

The therapist explained that it was his decision to phase out his visits because the defendant and the children appeared to be improving and relying on their own resources to solve their problems. He did not want them to become dependent on him.

3. *The Confidentiality of the Communications.* [2]

The psychotherapist privilege created by G. L. c. 233, § 20B, is available only to patients of those therapists who

---

[2] We look first to determine whether the communications were between a patient and a psychotherapist, and, thus, confidential. Because we conclude, *infra*, that the communications were not with a psychotherapist, it is unnecessary to consider whether the children would have a claim of confidentiality thus requiring a scrutiny of the communications under § 20B(c), notwithstanding the defendant's waiver of any privilege against disclosure. Cf. generally Huber & Roth, Preserving the Confidentiality of Medical Record Information Regarding Nonpatients, 66 Va. L. Rev. 583 (1980); Comment, The Psychotherapist — Patient Privilege in Texas, 18 Hous. L. Rev. 137, 161-162 (1980). See also Rule 503 of the Proposed Massachusetts Rules of Evidence (1980). Rule 503(a)(3) provides: "A communication is 'confidential' if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist, including members of the patient's family." Rule 503(b) states: "A patient has a privilege to refuse to disclose and to prevent any

meet the qualifications specified in § 20B. In the present instance, the therapist's credentials fall short of the statutory criteria.[3] However, there was evidence which showed that the therapist worked with the defendant and her children under the supervision of a psychotherapist, as defined by § 20B. While the judge indicated that the therapist was not a psychotherapist, she ruled that his testimony was not "sufficiently relevant or to the issue or important enough to breach that confidentiality." See § 20B(c). It is implicit from this ruling that the judge concluded that the communications were confidential by reason of the therapist's supervision by a statutorily qualified psychotherapist. This conclusion was erroneous.

---

other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his mental or emotional condition, including alcohol or drug addiction among himself, his psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family." In respect to the issue of waiver, we note also that the children testified to certain of their communications with the therapist, and the Commonwealth made no objection or assertion of the privilege on their behalf. Moreover, the basis of our conclusion makes it unnecessary for us to discuss the fact that the therapist and not a patient raised the confidentiality of the communications.

[3] While communications with certain licensed social workers may be protected from compelled disclosure under G. L. c. 112, § 135, a claim of confidentiality has never been asserted, either at trial or on appeal, under that provision. Although the therapist was questioned only in reference to c. 233, § 20B, he never mentioned that he was licensed pursuant to c. 112, § 131 or § 132, when he was describing his background, education, training, and other certifications in general. Thus, the record is silent as to any credentials held by the therapist which would provide a statutory basis, c. 233, § 20B, or c. 112, § 135, for shielding the communications with him from compelled disclosure. See and contrast Rule 503 of the Proposed Massachusetts Rules of Evidence, Advisory Committee's Notes ("That scheme [G. L. c. 233, § 20B, and G. L. c. 112, § 135] covers psychiatrists, psychologists with doctorates, and social workers, but excludes all other doctors and psychologists, even while engaged in the diagnosis or treatment of a mental or emotional condition. The Committee could not justify such distinctions, and drafted this rule to cover all categories of licensed or certified doctors, psychologists, and social workers while engaged in the diagnosis or treatment of a mental or emotional condition").

The psychotherapist privilege was created by the Legislature, and "[w]e are not free to water down the legislative policy embodied in the statute by loose construction or by giving our approval to informal procedures different from those prescribed." *Usen* v. *Usen*, 359 Mass. 453, 457 (1971). The therapist testified that he was an employee of the Westfield Area Mental Health and Retardation Association and that he "received regular consultation and supervision" from a staff psychotherapist at the Westfield Area Mental Health clinic. He stated that he was not acting in an intern capacity; rather, consultation meetings and supervision were "basic procedure in terms of mental health." The supervision consisted of a weekly consultation meeting between the therapist and the psychotherapist. There were no direct dealings or communications between the psychotherapist-supervisor and the defendant and her children.

As provided in § 20B, inserted by St. 1968, c. 418, "a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, *between said patient and a psychotherapist* relative to the diagnosis or treatment of the patient's mental or emotional condition"[4] (emphasis supplied). See also G. L. c. 112, § 135, inserted by St. 1977, c. 818, § 2 ("No social worker in any licensed category, including those in private practice, may disclose any information he may have acquired from persons consulting him in his professional capacity").

The facts of this case do not present a situation which requires us to consider whether the privilege should be judicially extended to an agent or assistant of the psychotherapist in order to protect an already existing confidential

---

[4] Section 20B defines a "patient" as "a person who, during the course of diagnosis or treatment, communicates *with* a psychotherapist" (emphasis supplied). The statute also provides that: "'Communications' includes conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing."

relationship recognized by the statute. See McCormick, Evidence § 101 (2d ed. 1972). But cf. *Commonwealth* v. *Lamb*, 372 Mass. 17, 21 (1977) ("Furthermore, many of the staff would not appear to be psychotherapists as defined in G. L. c. 233, § 20B, and the statute on its face would not apply to conversations between the defendant and those individuals").[5] Here, there were no confidential communications to protect. The defendant and her children never communicated with the psychotherapist, and, therefore, they were not his patients. Only those communications "between said patient and a psychotherapist" are shielded from compelled disclosure. In short, while an agency relationship may arguably give rise to situations where extension would still be consistent with the limited and narrow scope of § 20B, agency cannot be relied upon to create a psychotherapist-patient relationship that does not otherwise exist. Legislative action alone can do that. *Matter of Pappas*, 358 Mass. 604, 607 & n.4 (1971). *Usen* v. *Usen*, 359 Mass. at 457.

4. *The Relevance of the Excluded Communications.*

The Commonwealth points to the fact that the therapist had no direct knowledge of the facts concerning the charges. From this point it argues that even though the witness was not a psychotherapist, his testimony was so lacking in significance that the judge's exclusion of it was a proper exercise of discretion. See *Commonwealth* v. *Ahern*, 370 Mass. 283 (1976).

In excluding the evidence, the judge had concluded that the communications were privileged. For the testimony then to be admissible it was necessary first to find "that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." § 20B(c). Cf. *Trammel* v. *United States*, 445 U.S. 40, 50 (1980). Thus, the judge exercised her discretion by balancing the need for

---

[5] General Laws c. 112, § 135, was added by St. 1977, c. 818, § 2, subsequent to the *Lamb* decision.

the communications against the value of protecting a testimonial privilege. However, because no privilege existed, the testimony should be evaluated simply to determine whether it was relevant.[6] "In determining whether the evidence offered serves any valid purpose we apply the rule that it must merely render the desired inference more probable than it would be without the evidence. See McCormick, Evidence § 185, at 437 (2d ed. 1972); *Crowe* v. *Ward,* 363 Mass. 85, 89 (1973). We are influenced by the general view that relevant evidence should be admitted unless there is a quite satisfactory reason for excluding it. *Crowe* v. *Ward, supra.* Compare Federal Rules of Evidence, Rules 401-403, 28 U.S.C. App. (Supp. V. 1975) (as enacted by Pub.L.No. 93-595, January 2, 1975, effective July 1, 1975)." *Green* v. *Richmond,* 369 Mass. 47, 59 (1975). *Commonwealth* v. *Copeland,* 375 Mass. 438, 442-443 (1978). See also Rule 401 of the Proposed Massachusetts Rules of Evidence (1980) ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

We agree with the defendant that the therapist's testimony was relevant to the issue of credibility which was the dominant issue on which the trial turned. Indeed, the prosecutor repeatedly made that point to the jury during his closing argument: "[I]t really gets down to credibility and that's obviously the ultimate issue here, but the essence of it is going to be why would the kids lie?" "[W]hose credibility is at stake here," and, "Are you convinced that these kids are telling the truth?" are examples.

While the therapist had no direct knowledge concerning the acts embodied in the charges against the defendant, his testimony would have revealed to the jury that on prior occasions the children made statements to him which were

---

[6] We specifically refrain from any consideration whether the testimony would have been admissible notwithstanding the privilege.

inconsistent with their testimony at trial. "[A] party has the right to contradict a witness called by his opponent not only by his statements categorically opposed to his testimony but also by statements the implications of which 'tend in a different direction from what is sworn to.' *Liddle* v. *Old Lowell Natl. Bank*, 158 Mass. 15, 16 [1893]." *Langan* v. *Pianowski*, 307 Mass. 149, 151 (1940). *Commonwealth* v. *Pickles*, 364 Mass. 395, 402 (1973). One daughter testified that she felt no anger or bitterness toward her father because he left the home. She related that after her father's departure from the house, the defendant disparaged him and insisted that she falsely accuse him of rape. The daughter stated that she had then done so only because of the defendant's demands. She testified that the defendant put little effort into the upkeep of the house and that she did most of the cooking and cleaning. The daughter denied that she had embarrassed her brothers and sisters with her behavior toward her boyfriend and that the defendant had spoken to her about this. A son likewise denied that the defendant had threatened to curtail his activities if he continued to drink. If he had been allowed to testify before the jury, the therapist would have told them that he, the children, and the defendant, discussed the children's anger and resentment toward their father because the father had left them, the children's resistance to and complaints about the defendant's requests that they help her with the housework, the children's and the defendant's reaction to one daughter's behavior toward her boyfriend, and the defendant's response to one son's drinking. He would have further related that the counselling sessions were decreased and stopped by him because he did not want the defendant and the children to become dependent on him. The testimony would have provided a basis for the jury to conclude that all parts of the critical testimony by the children were not worthy of belief, or that the defendant's testimony was the more credible, in either event rendering it less likely that the Commonwealth had met its burden of proof.

"When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978), and authorities therein cited. We cannot conclude that the excluded evidence was irrelevant, inadmissible, or collateral in the posture in which the case was tried, or that the error was harmless in the circumstances. "[T]he essential consideration is that it was for the jury to hear and evaluate" the therapist's testimony. *Commonwealth* v. *Franklin*, 366 Mass. 284, 290 (1974).

The judgments are reversed, the verdicts are set aside and the cases are remanded for a new trial.

*So ordered.*