## COMMONWEALTH vs. FRANCIS PELOSI.

No. 99-P-1739.

Suffolk. October 15, 2001. - July 10, 2002.

Present: BROWN, CYPHER, & KAFKER, JJ.

Further appellate review granted, 438 Mass. 1106 (2003).

*Rape. Indecent Assault and Battery. Evidence,* Production on demand, Privileged communication, Communication with social worker, Relevancy and materiality. *Social Worker. Privileged Communication.*

In a criminal action involving rape of a child and two counts of indecent assault and battery on a child under the age of fourteen, the defendant was not entitled to discovery of the children's records from the Department of Social Services and counseling records from the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC) that had been generated after the children's disclosures of the abuse, on the ground that any privilege that the children may have had in the records had been waived, where the Commonwealth's release, as part of its discovery obligations, of reports pursuant to G. L. c. 119, §§ 51A and 51B, and the videotape of an interview of the children by an employee of the district attorney's office, did not constitute a waiver of any of the children's privileges; and where the children's mother's consensual release of progress notes made by a social worker to whom the mother had initially brought the children for counseling did not operate as a waiver of the privilege in the later counseling records from the MSPCC, an entirely separate entity. [395-399] BROWN, J., dissenting.

In a criminal action involving rape of a child and two counts of indecent assault and battery on a child under the age of fourteen, the judge did not abuse her discretion in denying, on the ground of insufficiency of relevance, a motion made pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), seeking discovery of the children's records from the Department of Social Services and counseling records from the Massachusetts Society for the Prevention of Cruelty to Children that were generated after the children's disclosures of the abuse. [399-403] BROWN, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on February 24, 1995.

A pretrial motion to produce records was heard by *Carol S. Ball,* J., and the cases were tried before *Charles T. Spurlock,* J.

*Douglas J. Beaton* for the defendant.

*Amanda L. Lovell,* Assistant District Attorney (*Joshua I. Wall,* Assistant District Attorney, with her) for the Commonwealth.

CYPHER, J. A jury convicted the defendant, Francis Pelosi, of two counts of rape of a child and two counts of indecent assault and battery on a child under the age of fourteen. The defendant appeals, claiming that the motion judge erred in denying his request for the children's counseling records, that the prosecutor's closing argument requires reversal, and that the jury instructions on fresh complaint were erroneous. We affirm.

The Commonwealth's proof consisted of the testimony of the defendant's children, "James," age 9, and "Sarah," age 8,[1] their mother, three fresh complaint witnesses, and a psychiatrist experienced in dealing with victims of childhood sexual abuse. The defense attempted to establish through cross-examination that the children had been subjected to a series of suggestive interviews. Defense counsel argued in her closing argument that the suggestive interview techniques, combined with the mother's hatred of the father, distorted the children's memories.

The jury could have found that the defendant touched Sarah indecently and engaged in unnatural sexual intercourse with her, and that the defendant had caressed James's buttocks and inserted his finger in his rectum on more than one occasion. James and Sarah testified that James had been in the room when his father had licked Sarah's private parts. According to James, these incidents of sexual abuse happened when he was in the first grade and a "little bit in the second grade."

Their mother testified that she left the defendant on August 18, 1994. On September 15, 1994, she brought the children to a Harvard Community Health facility, where they met, together and separately, with a licensed social worker, Fred Moder.[2] Her children had not told her of any sexual abuse by their father, and she had never seen any such abuse. She learned of the allegations when she was later contacted by the Department of Social Services (DSS).

Moder testified that the mother did not give him any informa-

---

[1] The names are fictitious.

[2] Moder testified that the mother's stated reason for bringing the children to counseling was because she had recently separated from the defendant and was concerned that the children would feel forced to take sides.

tion about the defendant sexually or physically abusing the children. While meeting alone with Moder, James disclosed to Moder that his father would lie in bed with him and rub his buttocks under his pajamas. During a follow up visit on September 20, Moder asked James whether his father had inserted his finger into his rectum and James said, "maybe a little bit."

At her first meeting with Moder, Sarah told him that her father would tickle her. Moder asked her whether the area her father tickled included her private parts. Sarah replied that it did.

After meeting with the children, Moder advised the mother that he would be contacting DSS.[3] Moder filed a report pursuant to G. L. c. 119, § 51A.[4]

Upon receiving Moder's § 51A report, Sean Carleton, an investigator for DSS, met with the defendant and advised him of the allegations. The defendant stated that he was physically affectionate with his children and that he had tickled James on his upper back and buttocks, but that the touching had not been sexual.[5]

Carleton interviewed the children. James told Carleton that his father had tickled and rubbed his back and buttocks on more than one occasion and that he did not like it. Carleton did not ask James whether his father had inserted his finger in his rectum.

Sarah cried and would not talk to Carleton alone. She was permitted to sit on her mother's lap and whisper her answers to her mother. Carleton asked her whether her father had touched

---

[3]The mother testified that at the end of her meeting she did not understand that Moder planned to contact DSS.

[4]Certain persons (including, but not limited to, physicians, social workers, and teachers) are mandated to report suspected child abuse to DSS. See G. L. c. 119, § 51A. The 51A report of suspected abuse triggers an investigation and evaluation by DSS pursuant to G. L. c. 119, § 51B (the 51B report). If that investigation reveals "reasonable cause to believe" that there has been abuse or neglect, then DSS must notify the "district attorney for the county in which the child resides . . . by transmitting . . . a copy of the report required under section fifty-one A and this section." G. L. c. 119, § 51B(4).

[5]Carleton also testified that the defendant denied ever hitting his son. Moder's notes indicated that James told Moder that his father also slapped his face "about a thousand times." At trial, James denied that his father had slapped him.

her in a way that she did not like. Sarah's crying intensified and she buried her head in her mother's shoulder. Carleton could hear her whisper to her mother that her father had licked her private parts. Sarah refused to answer any more questions.

Elizabeth Schon Vainer, an employee of the district attorney's office, testified that she conducted separate videotaped interviews of the children on October 28, 1994. She stated that in response to her questions, James told her that his father would "take him into his mother's bedroom and lie him on the bed and rub his bum and stick his finger up his bum a little." She testified further that James told her it was difficult for him to tell her this. She asked him how he knew that the finger went in his bottom and he said because it hurt a little. James told her that it happened at two different places they had lived and that the first person he had told was Moder.

Sarah told Schon Vainer that the defendant spread her legs and kissed and licked her "down there" on one occasion. Sarah told her that James was also in the room.

Dr. Renee Brant testified that when children tell about having experienced child sexual abuse, it is not usually "a one-time, straight forward event," but rather, a process of gradual, tentative, disclosure.

1. *The children's counseling records.* After discovery was completed, the defendant moved to compel production of his children's records from DSS and counseling records from the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC), generated after the children's disclosure. The defendant was in possession of the § 51A report, the § 51B report, the videotape, and Moder's notes. The defendant's motion set forth facts which he alleged supported his claim that the records contained relevant information.[6] The salient portions of the defendant's affidavit in support of the motion made pursuant

---

[6]*Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), and its progeny state that the defendant should first move to compel records. See *Commonwealth* v. *Bishop*, 416 Mass. at 181. See also *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996). While any discovery motion must, as a threshold matter, satisfy the relevancy, or in some cases, materiality, requirements of Mass.R.Crim.P. 14, 378 Mass. 874 (1979), a defendant is not required by the *Bishop-Fuller* protocol to detail his theory of relevance until the judge has determined that the records in question are privileged. As will be discussed later, *Bishop* did

to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993) (*Bishop*), stated:

> "Since the allegations, the children have been seen regularly by counselors at the Massachusetts Society for the Prevention of Cruelty to Children. . . . A review of these records by the Court is essential because the allegations first were made in the troubled environment of a recent separation of the parents. Such situations are likely to give rise to false or exaggerated allegations. The records are likely to contain evidence of bias by the mother of the children. Given the children's reluctance to speak during the taped interview, the records may show evidence of coaching or inconsistent statements."

A hearing was conducted on the motion, in which the Commonwealth argued that the records were subject to the social worker privilege. See *Pare* v. *Commonwealth*, 420 Mass. 216, 218 (1995) (Commonwealth is entitled to protect privileged records not required by *Bishop* to be disclosed). During the hearing, the judge discussed with counsel whether the more stringent standard of *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996), applied to the children's counseling records. The judge issued a decision the next day:

> "Certain of the children's confidential psychiatric[7] records have already been provided to defense counsel including the medical records prepared by the psychiatrist to whom the children originally made their disclosures. This prior disclosure of records suggests that concerns as to the confidentiality of the records requested have less urgency than the confidentiality concerns raised in [*Commonwealth*] v. *Fuller*, 423 Mass. 216 [(1996)]. Moreover, confidentiality was almost certainly not a motivating factor behind any participation in therapy by the children at

---

not eliminate the need for motions to conform to the rules of criminal procedure.

[7]The mistaken reference to Moder as a psychiatrist rather than a licensed social worker does not affect our analysis.

issue.[8] Nevertheless, this court feels compelled to deny the defendant's motion based on the precepts articulated in [*Commonwealth*] v. *Bishop*, 416 Mass. 169 [(1993),] as amplified by more recent judicial pronouncements on the general topic. [Citation to Single Justice opinion omitted.] Cf. [*Commonwealth*] v. *Fuller, supra.* In short, the motion is denied based on an insufficien[cy] of relevance."

Review on appeal is limited to whether the judge abused her discretion. See *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572 (1997), *S.C.*, 427 Mass. 427 (1998).

a. *Privilege determination.* The defendant reads the first and second sentences of the motion judge's decision to mean that the motion judge believed that any privilege the children had in their counseling records may have been waived by the mother's consent to the assistant district attorney's disclosure of Moder's notes, and that he was, therefore, entitled to the records. At the motion hearing, the defendant did not raise the issue of waiver; he argues it for the first time on appeal. An issue not raised below generally will not be considered on appeal. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

In any event, we do not construe the language of the motion judge as a finding that the children's privilege in their counseling records may have been waived. Rather, it appears that the parties and the judge proceeded on the assumption that the records were privileged under G. L. c. 112, §§ 135A and 135B (delineating the social worker privilege).[9] In appropriate cases, we may proceed to conduct appellate review where the privilege

---

[8]This reasoning was expressly rejected in *Commonwealth* v. *Pare*, 427 Mass. 427, 432-433 (1998) ("The public policy rationale supporting protection of records in the case of adult victims applies with equal force to the records of juvenile victims").

[9]The motion judge's written decision combined the privilege determination stage with the relevancy determination stage. See *Commonwealth* v. *Pare*, 427 Mass. at 429-430. When the decision is read in context with the hearing on the motion, however, it is apparent that the motion judge was expressing her resolution of the question whether the heightened standard in the recently decided *Fuller* case applied to the children's counseling records. See *Commonwealth* v. *Fuller*, 423 Mass. at 225-226 & n.9. That the *Fuller* standard applied to records other than those protected by the rape counseling privilege

determination is implied. See *Bishop, supra* at 174 n.2 (parties proceeded on the assumption that the records were privileged); *Commonwealth* v. *Oliveira,* 431 Mass. 609, 616 (2000) (same). See also *Commonwealth* v. *Ramos,* 47 Mass. App. Ct. 792, 795-796 (1999) (court reviewed a *Bishop* determination despite a lack of written findings); *Commonwealth* v. *Zane Z.,* 51 Mass. App. Ct. 135, 143-145 (2001) (judge did not reduce stage one findings to writing, but no reason to remand for written findings without some showing of what might be accomplished).

The Commonwealth's release, as part of its discovery obligations, of the § 51A report, the § 51B report, and the videotape did not constitute a waiver of any of the children's privileges.[10] See *Commonwealth* v. *Pratt,* 42 Mass. App. Ct. 695, 697 n.4, 700 (1997) (although a defendant is entitled to a § 51B report, that fact does not necessarily lead to the conclusion that documents supporting the § 51B report lose their privilege or confidentiality). See also *Commonwealth* v. *Jones,* 404 Mass. 339, 341 (1989) (defendant entitled to § 51B report); *Com-*

had not yet been resolved by the Supreme Judicial Court. See *Commonwealth* v. *Oliveira,* 431 Mass. 609, 617 (2000).

In *Fuller,* the court discussed at length the "confidentiality" expected by the person receiving rape crisis counseling and considered how liberal disclosure of records could erode that expectation to the detriment of those in need of counseling. See *Commonwealth* v. *Fuller,* 423 Mass. at 221. Here, the motion judge's decision shows she wrestled with the degree to which there was an expectation of "confidentiality" in the children's counseling records and how that expectation affected the relevancy standard. She concluded that, in these circumstances (which included the fact that Moder's notes had been disclosed), the more stringent *Fuller* standard did not apply and that the defendant had failed to meet the *Bishop* standard.

[10]In fact, one exception to the social worker privilege, contained in G. L. c. 112, § 135(*f*), applies to information the social worker acquires while conducting a § 51B investigation. "Sections 135(*f*) and 51B [of c. 119], read together, allow a criminal defendant to obtain the investigation and evaluation reports which ultimately led to his indictment and criminal prosecution." *Commonwealth* v. *Jones,* 404 Mass. 339, 341 (1989). DSS regulations further contemplate such disclosure. Title 110 Code Mass. Regs. § 4.53(3) (1994) explicitly provides that: "Any documents provided to a District Attorney in accordance with 110 CMR 4.00, which are thereafter subpoenaed from the District Attorney or otherwise requested from the District Attorney by any party to any pending criminal matter, shall be released or not released by the District Attorney solely in accordance with the applicable rules or procedures governing the District Attorney, and no notice to or consent from the Department shall be required."

*monwealth* v. *O'Brien*, 27 Mass. App. Ct. 184, 186-187 & n.2 (1989); *Commonwealth* v. *Arthur*, 31 Mass. App. Ct. 178, 182 n.7 (1991).

Nor did the mother's consensual release of Moder's Harvard Community Health progress notes operate as a waiver of the social worker privilege in the children's counseling records from the MSPCC, an entirely separate entity. First, there is nothing in the record to suggest that the mother was aware of the privilege at the time she signed the release. Compare *Commonwealth* v. *Neumyer*, 432 Mass. 23, 36 n.16 (2000) (no valid waiver of privilege where record did not indicate that an un-counseled eighteen year old had been informed of her rights with regard to the privilege). See also rule 511 of the Proposed Massachusetts Rules of Evidence (disclosure does not create a waiver of a privilege if the privileged matter is disclosed under compulsion or if the disclosure was made without an opportunity to assert the privilege).

Second, the privilege protects communications. The fact that Moder's notes contained, perhaps, the same subject matter as the counseling records does not create a waiver of the children's privilege in other protected communications. See *Commonwealth* v. *Goldman*, 395 Mass. 495, 499-500 (1985) (where a witness testifies about the underlying *topic* of a privileged communication there is no waiver, but where the witness testi-fies to the *specific* privileged communication, there may be a waiver)[11]; *Commonwealth* v. *Clancy*, 402 Mass. 664, 669 (1988) (witness who testified regarding mental health treatment did

---

[11]The dissent overstates the majority's application of the principles of *Commonwealth* v. *Goldman*, 395 Mass. 495 (1985), and *Commonwealth* v. *Clancy*, 402 Mass. 664 (1988), to the facts of this case. *Commonwealth* v. *Goldman*, 395 Mass. at 500, resolved a conflict in the law regarding waiver of attorney client privilege. The court rejected the proposition that testifying about an event would waive the attorney-client privilege and expressly adopted the position that only testimony about the content of the privileged communica-tion would result in a waiver. Although this is not a case of "waiver by testimony," but rather of alleged waiver by consent, the reasoning is analogous. The dissent relies on rule 510 of the Proposed Massachusetts Rules of Evidence as support for the conclusion that the privilege may have been waived by the mother's consent to the release of Moder's notes. Proposed Rule 510 states: "A person upon whom these rules confer a privilege against disclosure waives the privilege, if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part

"not relinquish all protection by merely testifying to events falling within the subject matter of a privilege").

Neither the case law nor the rules of criminal procedure supports the dissent's assumption that a defendant is automatically entitled to receive material that is not privileged or for which a privilege has been waived. The defendant still would be required to comply with the rules of criminal procedure concerning discovery or production of evidence from third parties. Any criminal discovery or production motion, whether brought under Mass.R.Crim.P. 14, 378 Mass. 874 (1979), or Mass.R.Crim.P. 17, 378 Mass. 885 (1979), or characterized as a *Bishop-Fuller* motion, must meet a threshold standard of relevance.[12]

Relevance is a requirement for access to even non-privileged records. Nothing in *Bishop* is to the contrary. Rather, *Bishop* prescribes a *protocol* for dealing with records which may contain relevant information and which may be subject to a privilege. The statement in *Bishop* that "[i]f the judge rules that the undisclosed clinic records are not privileged, then the judge shall release the records to the parties," *Bishop*, 416 Mass. at 184, was not intended to do away with the threshold relevance inquiry which precedes application of the *Bishop* protocol itself. That this is so is apparent from the *Bishop* court's handling of the defendant's claimed entitlement to school records, which were not privileged. Citing Mass.R.Crim.P. 14, the court determined that the sought-after school records were not relevant

of the privileged matter." The privileged matter refers to the communication, not the topic of the communication. See Liacos, Brodin, & Avery, Massachusetts Evidence § 13.4.8, at 788-789 & n.5 (7th ed. 1999). In *Commonwealth* v. *Clancy*, *supra* at 668, the Supreme Judicial Court determined that the reasoning in *Goldman* was equally applicable to situations involving the patient-psychotherapist privilege.

[12]Regardless of whether a *Bishop-Fuller* request is brought as a discovery motion under Mass.R.Crim.P. 14(a)(2), or as a production request under Mass. R.Crim.P. 17(a), the motion should be accompanied by an affidavit which (1) identifies the records with as much specificity as possible; (2) states that pretrial discovery is otherwise complete; (3) states that the material sought is not available elsewhere; and (4) states the reason the material is likely to be relevant to a live issue in the case. See *Commonwealth* v. *Fuller*, 423 Mass. at 226. See generally Smith, Criminal Practice and Procedure § 1559 (2d ed. 1983 & Supp. 2001) (discussing the requirements which must be met before a defendant may use Mass.R.Crim.P. 17).

and denied the defendant access to these records. See *Bishop*, *supra* at 186-187.

Where a defendant seeks access to confidential or sensitive material, a balancing test is employed. See *Commonwealth* v. *Tripolone*, 425 Mass. 487, 489 (1997) (court concluded that the *Bishop-Fuller* protocol applied to communications which were considered by statute "confidential" but not privileged); *Commonwealth* v. *Wanis*, 426 Mass. 639, 644-645 (1998) (citing *Fuller*, the court held that where a motion for production of internal affairs records is opposed, the defendant must advance a specific, good faith reason for believing that the information is relevant to a material issue in the criminal proceedings and could be of real benefit to the defense before personal information about a police officer is disclosed); *Commonwealth* v. *Neu-myer*, 48 Mass. App. Ct. 154, 162 (1999), *S.C.*, 432 Mass. 23 (2000) (where the judge concluded that a hotline log was not privileged and that the defendant's proffer was sufficient under *Fuller* for in camera review, it was proper for the judge to order production of the hotline records through use of a rule 17(a)(2) subpoena duces tecum). See also G. L. c. 214, § 1B; *Ritchie* v. *Pennsylvania*, 480 U.S. 39, 52-56 & n.9 (1987) (the confrontation clause and the compulsory process clause do not create a constitutionally compelled rule of pretrial discovery; the appropriate analysis is conducted under the Fourteenth Amendment due process clause).

b. *Relevancy determination.* The motion judge concluded that the defendant's proffer on relevance was insufficient under *Bishop*. As we have stated, appellate review is limited to whether the judge abused her discretion. See *Commonwealth* v. *Pare*, 43 Mass. App. Ct. at 572; *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 943-944 (1998).

Relevancy determinations are case and fact specific. The defendant argues that his affidavit satisfied the relevancy standard, at least, for in camera review.[13] The defendant's proffer was comprised of three discernable theories of relevance: first, that the children had been subjected to suggestive interview

---

[13]During trial, before a different judge, the defendant renewed his motion for production of the counseling records on three occasions. On appeal, the defendant focuses only on the motion judge's decision and does not argue that

techniques by Moder, Carleton, and Schon Vainer; second, that the mother's ill will toward the father influenced the children to make false accusations; and third, that a troubled environment due to family separation was likely to lead to exaggeration and false charges.[14]

The defendant's first theory, that the counseling records "may" show that the children were subjected to additional suggestive interview techniques, fails. While it is true that the children disclosed gradually, first to Moder and then to Carleton, they did so before receiving counseling. The post-disclosure counseling records sought by the defendant were unlikely to demonstrate that the children's initial disclosures were the subject of later suggestive interviewing techniques. Compare *Commonwealth* v. *Zane Z.*, 51 Mass. App. Ct. at 146 (concluding that the juvenile did not establish a factual basis for review where counseling was "post event" and therefore less likely to be relevant); *Commonwealth* v. *Pare*, 427 Mass. at 428

the trial judge erred in denying his motion. Examination of the defendant's proffer at trial does not assist his appellate argument.

At the start of the trial, the trial judge ruled that the defendant's second motion for records was essentially the same as the pretrial motion and that he agreed with the motion judge's disposition of the issue. The defendant argued that Schon Vainer used suggestive interviewing techniques in the videotaped interview and that if counsel could see the DSS records of the children's counseling sessions, perhaps there would be additional evidence of suggestiveness. The judge denied the motion.

Before Schon Vainer testified, the defendant again argued that Moder, Carleton, and Schon Vainer used suggestive interviewing techniques and that if DSS had used suggestive techniques in between Carleton's interview and Schon Vainer's interview, then he would be better able to challenge Schon Vainer's testimony. The trial judge denied the motion, observing that there was no link between DSS and Schon Vainer.

After the Commonwealth presented all of its evidence, the defendant renewed his motion for the counseling records, arguing that if defense counsel were able to have access to the DSS records, that she "probably would be able to present to the Court a much stronger case to present to the jury, a much stronger case that these children were seriously influenced by the suggestive investigation process." The judge again denied the motion.

[14]The defendant also argued at the motion hearing that in the past she had two cases in which young children had recanted in counseling records, and that the children were under pressure because of the defendant's bad fathering while struggling with alcohol and drug abuse, and that the "mother was suffering from depression and stress from all of this. . . . And there could be something in these records."

(children's allegations came out in the counseling process). Moreover, to the extent that Moder, Carleton, or Schon Vainer used suggestive interviewing techniques, the defendant was already in possession of that information, as he was in possession of their reports, the videotape, and a transcript of the videotape.[15]

The defendant's second theory, that the "troubled environment" of a recent separation is likely to give rise to false or exaggerated allegations, was not supported in any way, either by generalized statistics, studies, expert opinion, or by any specific factual references to the children's situation. Cf. *Commonwealth* v. *Syrafos*, 38 Mass. App. Ct. 211, 215-216 (1995) (defendant's claim that victims of childhood incest have flashbacks of prior rapes was not supported by record).

With regard to the third theory of relevance, the mother's purported ill will toward the father, again the defendant offered no specific factual references in support of this theory. Moreover, there is nothing in Moder's notes or the DSS reports to support the claim that the mother had manipulated the disclosure.[16]

In our view, the judge did not abuse her discretion when she determined that the defendant's motion failed to establish sufficient relevance to warrant an in camera review. Here, the defendant's theory, that the records might contain evidence of the mother's bias or evidence that the children were led by suggestive interview techniques during counseling sessions, was based on "the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness." *Bishop*, 416 Mass. at 182, quoting from *People* v. *Gissendanner*, 48 N.Y. 2d 543, 549 (1979). This is exactly the sort of fish-

---

[15]The children did not testify at trial to any details or incidents that they had not previously related to Moder, Carleton, or Schon Vainer.

[16]Moder testified that the mother had not made any reference to physical or sexual abuse. Moder's notes corroborate his testimony, indicating that the mother's reason for bringing the children to see him was her concern that the children would feel pressured to take sides and that she did not report a history of "actual assault by the husband toward wife or children." Nor did she report the abuse to DSS. James testified that the first person he told was Moder, because he thought Moder "could do something more about it, because I knew he was a counselor . . . . I didn't like telling my mother."

ing expedition *Bishop* was designed to prohibit. Were such allegations sufficient to overcome the privilege, the counseling records of any child who received counseling after a substantiation of abuse and whose parents were divorcing would be subject to court inspection. Although inspection by a judge may be less of an intrusion than inspection by an attorney and subsequent disclosure at trial, *Bishop* intended that even at this early stage, the moving party must clear a hurdle that is more than just a pleading requirement. See *Commonwealth* v. *Fuller, supra* at 224-225; *Commonwealth* v. *DeMaria,* 46 Mass. App. Ct. 114, 120-121 (1999).

In cases in which the privilege has been pierced by a sufficient showing of relevance, the theory of relevance has been grounded in specific facts related to the case, rather than generalizations or unsubstantiated allegations. See, e.g., *Commonwealth* v. *Oliveira,* 431 Mass. at 615 (affidavit reciting facts surrounding the victim's suicide attempt nine months after her disclosure, which led to the disintegration of her family, when coupled with the failure to report the incident to police, demonstrated that the records surrounding the incident were likely to contain information relevant to the victim's credibility). Cf. *Commonwealth* v. *Neumyer,* 432 Mass. at 32-33 (affidavit set forth sufficient factors to establish that the victim's conversation with a rape counselor was the "turning point" in the case, thus meeting the *Fuller* standard).

The defendant also failed to establish that the information he sought was not otherwise available. See *Commonwealth* v. *Bishop,* 416 Mass. at 183 n.9; *Commonwealth* v. *Zane Z.,* 51 Mass. App. at 146. There is no indication in the defendant's affidavit that he made any effort to obtain this information in his capacity as the children's parent. Compare 110 Code Mass. Regs. § 12.08(4) (1993) (noncustodial parent has the same right of access to § 51A and § 51B reports as a custodial parent) with 110 Code Mass. Regs. § 12.09(5) (1993) (if DSS "has reason to believe that disclosure . . . of all or a portion of the social service file would be contrary to the child's best interest, the Department shall deny access and shall bring to the court's attention the reason(s) for denying access").

As noted above, the decision of the motion judge is reviewed

under an abuse of discretion standard. See *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. at 120. Considering the lack of detail in the defendant's proffer, we cannot say the judge abused her discretion.

Finally, the defendant was able to cross-examine Moder, Carleton, and Schon Vainer about their interviewing techniques.[17] The defendant had the opportunity to cross-examine the mother to determine whether she harbored such ill will against the father that she would manipulate the children to cultivate the allegation of abuse. The defendant also had the opportunity to cross-examine the children and explore the circumstances of their disclosure. As a member of the family, the defendant likely had access to information or other family and friends who could have substantiated his theory. The defendant was not precluded from arguing his theory of the case to the jury in closing argument. This case does not present a reasonable risk that nondisclosure of the victim's treatment records could have resulted in prejudice to the defendant or produced an erroneous conviction. See *Commonwealth* v. *Bishop*, 416 Mass. at 177; *Commonwealth* v. *Fuller*, 423 Mass. at 226.

2. *Other issues.* The defendant raised two additional arguments in his brief: alleged defects in the prosecutor's closing argument and the trial judge's instructions on fresh complaint. We conclude that the defendant's arguments are without merit. Examination of the record reveals that the prosecutor was within the bounds of proper argument and that the instructions adequately conveyed to the jury that fresh complaint evidence may be used only for corroboration.

*Judgments affirmed.*


BROWN, J. (dissenting). In my view, the majority has effectively submerged the key issue here: whether the trial judge made a proper initial determination, required by *Commonwealth*

---

[17]The defendant had a transcript and a copy of the videotape of Schon Vainer's interview of the children. Nothing prevented the defendant from requesting funds to hire an expert to review and evaluate the defendant's theory that the interview was suggestive.

v. *Bishop*, 416 Mass. 169, 179-183 (1993), whether the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC) and the Department of Social Services (DSS) counseling records were, in fact, privileged. Moreover, the majority says little or nothing about the heretofore vaguely defined standards relevant to making such a determination. These issues are crucial to assessing the defendant's claims. However, on the record before us, there are simply too many unanswered questions to permit meaningful review of these points. The only prudent course, therefore, would be to remand the case to the Superior Court for a further hearing on the defendant's motion for production of the contested counseling records.

The majority, however, rejects the necessity for even this brief detour. Given the extraordinary power of *Bishop* and its cognate cases to deprive a defendant of a cornerstone constitutional right — the right to marshal all relevant evidence in his defense — special care must be taken to ensure that all procedural safeguards mandated by these decisions are strictly enforced. Here there were irregularities, as the majority concedes. Due process requires correction of these missteps before the defendant's rights are set aside. For this reason, I respectfully dissent. I set out my analysis at some length, since this issue likely will recur in future cases.

1. *Adequacy of privilege determination.* At the time the defendant's motion for production of the complainants' counseling records was considered, the standard for determining whether these particular forms of potentially privileged documents were susceptible to discovery was provided exclusively by *Commonwealth* v. *Bishop, supra.* That is to say, the additional burdens imposed on a defendant seeking access to privileged records imposed by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996), had not yet been made applicable to materials other than those described in G. L. c. 233, § 20J.[1] As the Commonwealth concedes, and as the majority concludes,

---

[1]*Commonwealth* v. *Oliveira*, 431 Mass. 609, 617 (2000), might be read to suggest that *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996), was intended to encompass a broader range of privileged documents than those defined by G. L. c. 233, § 20J. However, a close reading of *Fuller* reveals no such express intention. Indeed, the decision, while allowing that *Bishop* applies to all forms of privileged material, discusses at length why § 20J docu-

the DSS and MSPCC records sought here are not rape counselor records as defined by that section. Rather, the parties stipulated at trial, and agree on appeal, that the records were subject only to the social worker privilege as expressed in G. L. c. 112, §§ 135A and 135B. See *Commonwealth* v. *Sheehan*, 435 Mass. 183, 185 & n.1 (2001) (applying *Bishop* to cases tried before *Fuller* principles were deemed to control proceedings).

Under *Bishop*, the motion judge was required first to assess whether the documents sought were subject to any privilege and, if so, to determine whether the privilege had been waived. As noted already by the majority, the judge wrote:

> "The defendant here is accused of molesting his own children and asks this court to order production of DSS and counselling records generated since the children 'disclosed' the alleged abuse. Certain of the children's confidential psychiatric records have already been provided to defense counsel including the medical records prepared by the psychiatrist to whom the children originally made their disclosures. This prior disclosure of records suggests that concerns as to the confidentiality of the records requested have less urgency than the confidentiality concerns raised in [*Commonwealth*] v. *Fuller*, 423 Mass. 216 [(1996)]. Moreover, confidentiality was almost certainly not a motivating factor behind any participation in therapy by the children at issue. Nevertheless, this Court feels compelled to deny the defendant's motion based on the precepts articulated in [*Commonwealth*] v. *Bishop*, 416 Mass. 169 [(1993)] . . . . In short, the motion is denied based on an insufficien[cy] of relevance."

Unfortunately, the motion judge's order confuses and conflates the initial analytical steps mandated by *Bishop*. Specifically, she failed to comply with *Bishop*'s basic procedural mandate that a motion judge, having found the existence of a privilege, must provide detailed written findings explaining the specific type, nature, and basis of the applicable privilege. See *Commonwealth* v. *Bishop*, 416 Mass. at 181. Merely reciting the

ments, as opposed to other types of privileged material, should be subject to a stricter rule. In any event, the motion judge applied a pure *Bishop* test here and, since the defendant's motion was decided before the decision in *Oliveira*, I would likewise apply the *Bishop* rule, unreformed by *Fuller*.

existence of a privilege, without more, is an insufficient basis, as matter of law, for denying a motion for production of confidential records. See *Commonwealth* v. *Pare*, 427 Mass. 427, 429-430 (1998). The motion judge's findings were simply not sufficiently detailed to meet the *Bishop* standard.

As a result of this procedural shortcoming, we cannot be sure how (or whether) the judge dealt with the evidence suggesting that any privilege with respect to the children's counseling records had been waived. As conceded by the majority, and as observed by the motion judge, the defendant received copies of the counseling records of Fred Moder, the clinical social worker to whom both children made the initial reports of abuse. These materials contained significant information, both about the nature of the abuse allegedly suffered by the children, as well as the children's reactions to same.

While adverting obliquely to the possible effects of these disclosures on the status of the children's privilege ("[t]his prior disclosure of records suggests that concerns as to the confidentiality of the records requested have less urgency than the confidentiality concerns raised in [*Commonwealth*] v. *Fuller*, 423 Mass. 216 [(1993)]"), the judge makes no definitive findings of fact or rulings of law on the issue. Rather, the motion judge's order suggests she may have believed that it was unnecessary to reach the privilege question because, in her view, the defendant had failed to satisfy the relevance requirements of *Bishop*.

The majority takes note of the serious procedural defects in the motion judge's handling of the privilege determination, concluding that "[t]he motion judge's written decision *combined the privilege determination stage with the relevancy determination stage*" (emphasis supplied). *Ante* at note 9. However, the majority then condones this fatal failure to abide by the plain mandate of *Bishop* by speculating that the judge may merely have been wrestling with the question of whether *Bishop* afforded the correct standard for review, or whether the elevated standard in *Fuller*, as discussed above, applied. The basis for this speculation is elusive to say the least. In any event, and much more important, neither *Fuller*, nor any case postdating *Bishop*, relieves a motion judge of his duty to consider

separately, as a threshold matter, whether counseling documents subject to a production request are privileged. The bottom line is that, regardless of the reason, the judge failed to follow required procedures; due process entitles the defendant to more.

By passing over the question of privilege because, in her view, the defendant would be unable to prove relevancy, the motion judge may have missed the dispositive issue here. At common law, the voluntary disclosure of privileged material constitutes a waiver of the privilege. This principle is echoed in rule 510 of the Proposed Massachusetts Rules of Evidence, which provides that "[a] person upon whom these rules confer a privilege against disclosure waives the privilege, if he . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter." This concept is most commonly applied in the criminal law context in connection with the various testimonial privileges, see, e.g., *Commonwealth* v. *Goldman*, 395 Mass. 495, 499-500 (1985), but applies with equal force to the release of confidential records. See *Commonwealth* v. *Clancy*, 402 Mass. 664, 667 (1988). See also *Commonwealth* v. *Clemons*, 12 Mass. App. Ct. 580, 584 n.2 (1981).

Needless to say, the mere fact that some privileged documents have been disclosed does not automatically destroy the privileged status of cognate materials — here the DSS and MSPCC reports. However, there is a serious question in this case — and one not adequately addressed by the motion judge in her order — whether the release of Moder's records amounted to a voluntary waiver of privilege with respect to all counseling records connected with the charged assault. As noted already, this question of whether a privilege attaches to the documents sought by the defendant is a crucial threshold issue on which the applicability of the entire *Bishop* regime hinges. All ambiguities on this point, therefore, need to be erased before we can begin to determine whether *Bishop* was correctly applied in this instance.

To justify the motion judge's actions, the majority relies on the dichotomy between concepts of privileged "subject matter" and privileged "communications." In essence, the majority takes the position that even if the victims here voluntarily consented, through their guardian, to the release of Moder's

counseling records, and even if the information in these materials were identical to the material contained in the DSS and MSPCC reports, nonetheless there would be no waiver. In the majority's view, each separate communication of confidential material carries with it a discrete privilege that must be individually waived. Thus, in the majority's view, if a sexual assault victim relates precisely the same information to three doctors, each of whom produces a separate record of the conversation, the voluntary disclosure of two of the reports would not constitute a waiver of confidentiality with respect to the third.

As a basis for this view, the majority relies on two cases, *Commonwealth* v. *Clancy*, 402 Mass. at 669, and *Commonwealth* v. *Goldman*, 395 Mass. at 500, neither of which, in fact, supports the majority's approach. Both *Clancy* and *Goldman* stand for the well-settled principle that "a witness does not relinquish [a privilege in a confidential record] . . . by merely testifying to events falling within the subject matter of a privilege." *Commonwealth* v. *Clancy*, 402 Mass. at 669. As the Supreme Judicial Court stated in *Goldman*, 395 Mass. at 499-500:

> "[there are] two distinct scenarios. In the first, a witness testifies as to events which happen to have been a topic of a privileged communication. In the second, the witness testifies as to the specific content of an identified privileged communication."

Privilege is *not* waived in the first situation, the court concluded, but it is in the second. See *Goldman, supra* at 500. Neither case, however, has anything to say about whether expressly waiving a privilege with respect to a confidential communication also waives any privilege inhering in the same communication made to a different confidante.

Contrary to the majority's view, the general rule in Massachusetts, as elsewhere, is that once a communication is conveyed to a third party, any privilege in the communication is destroyed. See Liacos, Brodin, & Avery, Massachusetts Evidence § 13.4.5 (7th ed. 1999); *Drew* v. *Drew*, 250 Mass. 41, 44-45 (1924). See also *Commonwealth* v. *Michel*, 367 Mass. 454, 460-461 (1975). The policy basis for such an approach is

plain: confidentiality rules are designed to promote full discussion of private, possibly embarrassing information with confidential counselors by assuring that the substance of the communication will remain private. See *Commonwealth* v. *Bishop* 416 Mass. at 176. See also *Commonwealth* v. *Collett*, 387 Mass. 424, 428 (1982).

Once the details of a confidential communication have been publicly disclosed, no policy interest is served by continuing to protect that communication with a privilege, at least where disclosure was consensual on the part of the privilege holder. This is equally true whether the communication was made to one or more confidantes. Once the communication is made public, the basis for the privilege disappears with respect to all recipients of that communication. This view is entirely consistent with rule 510 of the Proposed Massachusetts Rules of Evidence which, as noted, provides that a privilege dissipates if the privilege holder "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." See also Proposed Mass.R.Evid. 503(a)(3) (communications confidential if not intended to be conveyed to others).

As we stated in *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 571 (1997), *S.C.*, 427 Mass. 427 (1998): "The *Bishop* protocols have not altered the traditional recognition that testimonial privileges, which have the effect of inhibiting full disclosure of the truth, are exceptional and to be strictly construed." We added in *Pare*, quoting *Bishop* itself, that to assure a defendant's constitutional right to a fair trial, any doubts as to the applicability of a privilege must be resolved "in favor of disclosure." *Ibid.*, quoting from *Commonwealth* v. *Bishop*, 416 Mass. at 177. The majority's expansive concept of privilege directly opposes these concepts. If the DSS and MSPCC records here are substantially cumulative of Moder's reports, due process requires that they all be disclosed.

2. *Standard for finding waiver of privilege.* To the extent the question of waiver of privilege is largely a fact issue that must be assessed on a case-by-case basis, I believe, as noted already, that the only option here is to remand the matter to the motion judge for a further hearing. The subject matter of such a hearing would be two-fold: first, the motion judge would consider whether it appears from the record before her, supplemented by

any additional materials the parties may wish to adduce, that Moder's records and reports constitute a "significant" (quoting proposed rule 510) portion of the otherwise privileged counseling materials in this case. To this end, the motion judge must assess whether the documents already disclosed are similar in character, scope and form to the documents still sought by the defendant, or whether they merely constitute a small and insignificant subset of the main body of privileged materials, with but little overlap and slight affinity.

If the judge were to find that a significant part (as defined above) of the corpus of otherwise privileged materials here has been disclosed, she should then consider a second, separate issue: whether the disclosure was knowing and voluntary vis-à-vis the two child victims, *in whom the privilege resides.* See *Commonwealth* v. *Neumyer,* 432 Mass. 23, 35 n.15 (2000). Where a child is too young or otherwise is unable to engage in meaningful consultation about the merits of waiving a privilege, it is permissible for a court to permit a parent to waive (or refuse to waive) the privilege on the child's behalf. If, as it appears, the victims' mother voluntarily consented to the release of the privileged documents surrendered to the defendant — a point that must be verified at the hearing — her action likely can be imputed to the children.[2]

However, where the interests of child and parent diverge, a court is required to appoint a guardian to safeguard the child's interests in maintaining the confidentiality of privileged records. See *Adoption of Diane,* 400 Mass. 196, 202 (1987). Cf. G. L. c. 233, § 20B (regarding appointment of guardians for the purpose of asserting a patient's privilege). Although there is nothing in the record here supporting such an inference, if it emerges at the hearing that there is good reason to believe that the victims' mother was motivated by concerns at odds with the

---

[2]The majority speculates, without any basis in the record, that the mother might not have been "aware of the privilege" protecting the confidentiality of the children's treatment records. Needless to say, any waiver of the privilege here must have been voluntary *and* knowing to be effective. However, it is not an appellate court's function to speculate about such important fact issues. It is precisely because we know so little from the record about the circumstances attending the release of Moder's reports that the case, in my view, must be remanded for a further hearing.

best interests of the children when she agreed to release Moder's records and reports, then the motion judge cannot find any waiver in the disclosure of those materials. Again, the privilege belongs to the children; only they, or those properly authorized to act on their behalf, can waive the privilege.

If the motion judge were to determine there has been a waiver of the privilege, the defendant would be entitled to examine all of the materials sought in his original discovery order. Based upon that review, the defendant could then file a motion for a new trial, setting out precisely how the newly disclosed materials might have advanced his defense. A new trial would be required here only if an improper failure to disclose the requested materials resulted in actual prejudice. Absent prejudice, no relief would be required.