Connolly, Thomas E., J.
The plaintiff has requested the production of the defendant, Charvak Prakash Karpe’s complete medical file from the MIT Infirmary. The defendant, Karpe filed a motion for a protective order alleging that the documents were protected from discovery under ch. 233, §20B. The Court issued its Memorandum and Order on Plaintiffs Motion to Compel Compliance with the Deposition Subpoena Duces Tecum and on the Defendant Karpe’s Emergency Motion for a Protective Order, entered on the docket on *182 May 13, 2005 (Docket No. 34) (five pages) (19 Mass. L. Rptr. 342).[1]
The defendant, Karpe has filed a motion to stay production of said documents and filed a Motion for Reconsideration of the Court’s Order of May 13, 2005 ordering the production of said MIT Infirmary records. On June 13, 2005, the Court set a hearing on the defendant Karpe’s Motion for Reconsideration for July 1, 2005. The Court also ordered the defendant MIT to produce Karpe’s entire MIT Infirmary record to enable the Court to perform an in-camera inspection of said records. The Court also ordered that the records be impounded.
The Court held a hearing on July 1, 2005, and this Memorandum and Order is being issued on said Karpe’s Motion for Reconsideration.

DISCUSSION

The first question for the Court to address is whether the MIT Infirmary records of the defendant Karpe are privileged, which records concern his conversations with a staff psychologist.
The impounded MIT Infirmary records and other discovery in this case reveal that Karpe was ordered to and required by Judcomm (a disciplinary body within MIT) and Nina Davis-Millis (the Random Hall Housemaster) to see a psychologist at the MIT Infirmary. It was not done at Karpe’s initiation. A review of the impounded documents shows that the psychologist, Alan E. Siegal, Ed.D., Chief of the Mental Health of the MIT Infirmary was writing to and otherwise communicating with Dean Randolph. In the first paragraph of a two-page letter to Dean Randolph, dated February 4, 2004, Doctor Siegal writes as follows:
Dear Bob,
I am writing to you about Charvak Karpe, a student known to both of us. At the beginning of my work with him, he gave me permission to talk with you about his life as a student at MIT. He continues to approve my sharing my impressions and concerns -with you.
Thereafter, Doctor Siegal goes on for two pages extensively setting out the facts and his feelings as stated to him by Karpe, his diagnosis, conclusions and recommendations made as to Karpe.
The question then becomes whether the relationship between Karpe and Doctor Siegal was a confidential relationship, so as to be subject to ch. 233, §20B. See Commonwealth v. Clemons, 12 Mass.App.Ct. 580, 584 n.2 (1981). Some confidential relationship must exist between a patient and a psychologist before the privilege can be invoked. Commonwealth v. Mandeville, 386 Mass. 393, 409 (1982); Commonwealth v. Clemons, 12 Mass.App.Ct. 580, 586-87 (1981). While it has been held that a psychologist or psychiatrist writing confidential notes in a hospital record does not waive the privilege, Usen v. Usen, 359 Mass. 453, 455-57 (1971), it is quite another matter when the patient, Karpe, gives permission to talk to and to write to Dean Robert Randolph. The agreed arrangement is set out above in Doctor Siegal’s two-page letter to February 4, 2004 to Dean Randolph. There obviously was no confidential relationship here between Karpe and Doctor Siegal. “A person upon whom these rules confer a privilege against disclosure waives the privilege, if he . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter.” Commonwealth v. Pelosi, 55 Mass.App.Ct. 390, 407 (2002) (Brown, J. dissenting). Commonwealth v. Pelosi, 441 Mass. 257, 264 n.8 (2004). “Once voluntary disclosure of the [confidential communications, etc.) is made to those who are not part of the protected relationship, the patient can no longer be said to have justifiable expectation in the confidentiality of these records which is precisely what these statutes are designed to protect.” Ford v. Cardinal Bernard Law, No. 02-1548 slip op. at 1 (Middlesex Superior Court, May 10, 2002) (Sanders, J.). The relationship between Doctor Siegal and Karpe was not a confidential one, and hence no patient-therapist privilege is applicable to Karpe’s MIT Infirmary records.

ORDERS

The defendant Karpe’s Motion to Stay the Production is DENIED. The defendant, Karpe’s Motion for Reconsideration of the Court’s Order to produce the MIT Infirmary records for the defendant, Karpe, is DENIED, and production of said documents shall be made to plaintiffs counsel within seven days of the date of this Order.

 See also the Court’s Amended Memorandum and Order on Plaintiffs Motion to Compel the Production of all Documents Generated by Kathleen Wallace during her independent investigation into the death of Julia Mills Carpenter, entered on the docket on June 2, 2005 (docket No. 39) (nine pages) (19 Mass. L. Rptr. 339).